```
               IN THE UNITED STATES DISTRICT COURT
                FOR THE SOUTHERN DISTRICT OF OHIO
                         EASTERN DIVISION


OSU Pathology Services, LLC,   :
     et al.,

          Plaintiffs,          :    Case No. 2:11-cv-005

     v.                        :    JUDGE GEORGE C. SMITH
                                    Magistrate Judge Kemp
Aetna Health, Inc.,            :

          Defendant.           :
```

OPINION AND ORDER

    This case arises from an arbitration proceeding which was initiated by the defendant Aetna Health, Inc. under the auspices of the American Arbitration Association. The case is currently before the Court to resolve a discovery dispute. For the following reasons, the Court resolves the dispute in favor of allowing Aetna to do a limited amount of discovery and to supplement its response to the plaintiffs' pending summary judgment motion after that discovery has been completed.

               I.   The Background of the Dispute

    By way of background, Aetna's arbitration demand stems from an agreement entered into by Aetna and plaintiff Ohio State University Physicians, Inc. in 2005. In their complaint, plaintiffs (Ohio State University Physicians, Inc. and a related entity, OSU Pathology Services, LLC) claim that they are under no obligation to arbitrate the issues in question, and they seek an order from this Court directing that the proposed arbitration not proceed. Plaintiffs moved for summary judgment on this issue on January 28, 2011, arguing, among other things, that the arbitration should not go forward because (at least according to plaintiffs) the arbitration agreement which Aetna seeks to enforce was revoked and superseded before Aetna made its demand

for arbitration, and because plaintiff Pathology Services was not a party to the agreement even if it is still in effect.

When the discovery issue arose, Aetna had not yet filed a response to the motion for summary judgment. In the parties' Rule 26(f) report (Doc. #12), Aetna indicated that it might need limited discovery if Pathology Services took the position that it was never bound by the 2005 agreement. In its initial Rule 16 order (Doc. #14), the Court set a deadline of February 28, 2011 for the completion of any discovery.

According to the parties' filings made in connection with the present discovery dispute, on January 26, 2011, Aetna served each plaintiff with a Rule 30(b)(6) notice of deposition and with document requests. Plaintiffs' counsel immediately contacted Aetna's counsel, objecting to the depositions as not reasonably calculated to lead to the discovery of admissible evidence, and, at the same time, filed a motion for a protective order. The Court held a telephone conference on February 2, 2011. The issue was not resolved at the conference or afterward by the parties. They have now briefed the motion for a protective order and Aetna's competing motion to compel discovery. In addition, Aetna filed a motion to extend the time for responding to the summary judgment motion, and, after plaintiffs responded to that motion, filed a motion for a continuance of proceedings under Fed.R.Civ.P. 56(d). It has also filed its own summary judgment motion and a combined memorandum in support of that motion and in opposition to plaintiffs' motion. The Court will take all of these filings into account in making its ruling.

II. The Parties' Positions

Because Aetna is the party which served the discovery requests and is the proponent of discovery going forward, the Court will set out Aetna's position first.

As noted above, one of the issues raised by the plaintiffs'

summary judgment motion is whether Pathology Services is bound to arbitrate any issues with Aetna even though it did not sign the agreement which contains the arbitration clause Aetna has invoked.  No one disputes the fact that Pathology Services did not sign the agreement.  However, Aetna contends that Pathology Services may still be legally required to arbitrate with it.

In its combined memorandum in support of its motion to compel and in opposition to the motion for a protective order, Aetna cites to, among other cases, Thomson-CSF, S.A. v. American Arbitration Ass'n, 64 F.3d 773 (2d Cir. 1995) for the proposition that, under the right circumstances, non-signatories to an agreement containing an arbitration clause may still be obligated to arbitrate issues arising under the agreement.  In Thomson-CSF, the court, while citing with general approval the notion that arbitration agreements should not ordinarily be expanded to include "claims and parties that were not intended by the original contract," also noted that the ordinary principles of contract interpretation still apply to arbitration agreements.  Id. at 776.  It reasoned that under such concepts as "1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel," a non-signatory might well be required to arbitrate.  Id.  Aetna argues that some of these factors may be present here, and that they are fact-intensive issues, so that discovery directed to any of them is directly relevant to the question of whether Pathology Services is bound by the arbitration clause in question.

In its motion for a protective order, Pathology Services does not take issue with the basic contention that there are times when a non-signatory to a contract can be bound by an arbitration clause found in that contract.  However, it points out that in this case, the contract in question contains an integration clause (Section 9.13, which can be found attached to

a sealed affidavit (#23) filed in support of plaintiffs' motion for summary judgment) which operates to prohibit the introduction of parol evidence to vary or contradict the terms of the agreement.  The integration clause, as is typical of such clauses, states that the agreement is the "complete and sole contract between the parties" and that it "supersedes any and all prior or contemporaneous oral or written representations, communications, proposals or agreements not expressly included herein and may not be contradicted or varied by evidence of prior, contemporaneous or subsequent oral representations, communications, proposals, agreements, prior course of dealings or discussions of the Parties."

    Taking this argument to the next step, Pathology Services contends that although there may be circumstances where, notwithstanding such a provision, extrinsic evidence might be used to prove the existence of one of the five bases for binding a non-signatory to an arbitration agreement, those circumstances are not present here.  That is so, it argues, because another provision of the contract, section 8.4, states that the two signing parties agreed that "any arbitration or other proceeding related to a dispute arising under this Agreement shall be conducted solely between them," and section 9.6 says that the agreement "does not apply to any other organization which ... is an affiliate of" Ohio State University Physicians, Inc. Pathology Services (which does appear to be an affiliate of Ohio State University Physicians, Inc.) then asserts that should the Court find these provisions to be unambiguous (and it believes that they are), and should the Court further find that they answer definitively the question of who is bound to arbitrate under the agreement, it would violate the Ohio parol evidence rule to allow Aetna to introduce any extraneous evidence which would vary or contradict these terms, even if that evidence might

otherwise be admissible to show that one of the five bases for holding a non-signatory to an arbitration clause is present here.

### III. Discussion

Much of Aetna's argument in support of its motion to compel discovery rests on Judge Marbley's decision in MJR Intern., Inc. v. American Arbitration Ass'n, 2009 WL 2824102 (S.D. Ohio August 26, 2009), aff'd 2010 WL 3927310 (6th Cir. September 21, 2010). Like this case, MJR involved a dispute about whether a non-signatory to an agreement containing an arbitration clause could be compelled to arbitrate disputes arising under the agreement. The non-signatory party, MJR, had been named as a party to the arbitration proceedings on the theory that it was the principal of one of the signatories to the agreement and that under agency law, it was bound by the agreement. MJR was ordered by the arbitrator to arbitrate the dispute. MJR then filed a complaint in this Court seeking to be relieved of that obligation. The Court, after conducting a one-day bench trial, agreed with the arbitrator's conclusion that an entity named Oxford, which was a named party to the underlying agreement, had acted as MJR's agent in negotiating the agreement and that MJR was therefore bound by its terms, including the arbitration provision contained in the contract.

In opposing that result, MJR argued to Judge Marbley that because the agreement between Oxford and YKI, the other party, was fully integrated, the Court was limited in its inquiry to the language of the agreement itself and could not consider either pre-execution or post-execution acts or documents in construing the agreement. Judge Marbley rejected that argument, finding that it "completely misconstrues the relevant inquiry in this case." MJR, 2009 WL 2824102, at *7 n.6. The relevant inquiry, as he viewed it, was whether an agency relationship existed between MJR and Oxford, and the agreement simply did not address

that question.  Thus, evidence about the agency relationship was not designed to alter or contradict any term of the contract, but simply to determine if MJR was bound to honor the terms to which its agent had agreed.  To preclude the use of extrinsic evidence in these circumstances would, as Judge Marbley noted, lead to the "nonsensical" result that if a contract negotiated by an agent on behalf of a principal did not expressly acknowledge, by language in the contract itself, the existence of the agency relationship, the principal "could almost always avoid liability for contracts entered into on its behalf by an agent merely by refusing to sign the contract itself."  Id.

On appeal, the MJR decision was affirmed based on Judge Marbley's reasoning.  Pathology Services does not (and could not) argue that this Court is not bound to follow MJR, but only that it is inapposite.  It attempts to distinguish MJR because its argument against the use of extrinsic does not rely solely on the presence of an integration in the contract, but upon the fact that the specific parol evidence which Aetna seeks to discover would, if accepted by the Court, directly contradict a contractual term (present here, but absent in MJR) specifying that if an arbitration were to occur, only the signing parties – and not anyone else, even if that "anyone else" stood in a principal-agent relationship to one of the signing parties – would participate in that arbitration.

The Court has reviewed the agreement which Judge Marbley construed in MJR (it can be found on the docket of Case No. 2:06-cv-00937 as Exhibit 3 to Defendant's Notice of Removal, Doc. #2) and Pathology Services is correct that there is no language in that agreement's arbitration clause specifically limiting the arbitration to the signing parties.  That certainly distinguishes MJR from this case, but the more pertinent question is whether it is a distinction which makes a difference, especially when the

Court considers that the present motion is a discovery motion and not a motion which will be ultimately dispositive of any claim or defense.

It is perhaps important to set forth the usual rules of relevance as they relate to discovery, even though these rules are well-known to the parties. The Federal Rules of Civil Procedure authorize extremely broad discovery. <u>United States v. Leggett & Platt, Inc.</u>, 542 F.2d 655 (6th Cir. 1976). Therefore, Fed.R.Civ.P. 26 is to be liberally construed in favor of allowing discovery. <u>Dunn v. Midwestern Indemnity</u>, 88 F.R.D. 191 (S.D. Ohio 1980). Any matter that is relevant, in the sense that it reasonably may lead to the discovery of admissible evidence, and is not privileged, can be discovered. The concept of relevance during discovery is necessarily broader than at trial, <u>Mellon v. Cooper-Jarrett, Inc.</u>, 424 F.2d 499 (6th Cir. 1970), and "[a] court is not permitted to preclude the discovery of arguably relevant information solely because if the information were introduced at trial, it would be 'speculative' at best." <u>Coleman v. American Red Cross</u>, 23 F.3d 1091, 1097 (6th Cir. 1994).

Information subject to disclosure during discovery need not relate directly to the merits of the claims or defenses of the parties. Rather, it may also relate to any of the myriad of fact-oriented issues that arise in connection with the litigation. <u>Oppenheimer Fund, Inc. v. Sanders</u>, 437 U.S. 340 (1978). On the other hand, the Court has the duty to deny discovery directed to matters not legitimately within the scope of Rule 26, and to use its broad discretionary power to protect a party or person from harassment or oppression that may result even from a facially appropriate discovery request. <u>See Herbert v. Lando</u>, 441 U.S. 153 (1979). Additionally, the Court has discretion to limit or even

preclude discovery which meets the general standard of relevance found in Rule 26(b)(1) if the discovery is unreasonably duplicative, or the burden of providing discovery outweighs the benefits, taking into account factors such as the importance of the requested discovery to the central issues in the case, the amount in controversy, and the parties' resources.  See Fed.R.Civ.P. 26(b)(2).  Finally, the Court notes that the scope of permissible discovery which can be conducted without leave of court was narrowed by the December 1, 2000 amendments to the Federal Rules.  Rule 26(b) now permits discovery to be had without leave of court if that discovery "is relevant to the claim or defense of any party ...."  Upon a showing of good cause, however, the Court may permit broader discovery of matters "relevant to the subject matter involved in the action."   Id.

### A.   The Agency Theory

Pathology Services' position on the agency theory does present an issue not directly addressed in MJR.  Suppose, for example, that Aetna succeeded in proving that Ohio State University Physicians, Inc. was acting as an agent for Pathology Services when it negotiated the agreement.  However, according to plaintiffs, one of the negotiated terms provides that any arbitration proceeding would be confined to Ohio State University Physicians, Inc. and Aetna.  Under those circumstances, proof that Ohio State University Physicians, Inc. was acting as Pathology Services' agent would not alter the terms of the contract; even through an agent, Pathology Services could well have negotiated a contract term that excludes it from participation in an arbitration and leaves that function exclusively to its agent.

This line of reasoning, while interesting, does not persuade the Court that the discovery on the agency issue, or the presentation of evidence concerning an agency relationship, would

be barred by the parol evidence rule. It is still the case that the agreement does not address, or attempt conclusively to resolve, the question of whether Ohio State University Physicians, Inc. was acting only for itself or on behalf of other affiliates or principals such as Pathology Services. Therefore, evidence of the existence of a principal-agent relationship between Ohio State University Physicians and Pathology Services would not contradict or vary any term of the agreement. However, if plaintiffs are construing the contract correctly, such evidence might well be irrelevant to the question of whom the agreement includes within the scope of the arbitration clause.

The Court notes, however, that Aetna, in its response to the summary judgment motion, provides an alternative interpretation of the agreement - specifically, Section 2.4 - that would allow the Court to determine that the agreement, by its language, binds Pathology Services, as "Participating Group Physicians," to all the terms of the agreement, including the arbitration clause. It suffices to say for the moment that under the broad standard of relevance applicable to discovery issues, and taking into account that the ultimate decision about how the agreement should be construed is a merits decision left to the presiding District Judge, discovery about the agency question, if properly limited to that question, may be reasonably calculated to lead to the discovery of relevant evidence even if it ultimately turns out that the District Judge deems the evidence to be immaterial. This issue will be discussed further below after the Court has considered whether there are any other theories which might entitle Aetna to conduct discovery, so that the Court can then address the question of what the proper scope of discovery might be.

    B. <u>The Estoppel and Alter Ego Theories</u>

As noted above, Aetna has not confined its argument to the

issue of agency.  Rather, it relies on three of the five exceptions recognized in Thomson-CSF, namely agency, alter ego, and estoppel.  The Court will now examine those other theories to determine if they also provide some basis for conducting discovery.

Aetna's estoppel theory, as set forth in its memorandum in support of its motion to compel, is based on the proposition that an entity which accepts the benefits of a contract to which it is not a party should be deemed, on equity grounds, to have accepted the obligations contained in the contract as well.  Its alter ego theory posits that if it can show that Ohio State University Physicians was simply acting as a "front" for Pathology Services (rather than as an agent, which is a different concept), the Court can replace the "front" entity with the "real" entity (here, Pathology Services).  If that were to occur, Pathology Services would be considered, in law, to be a party to the agreement, and as a party, it would be bound to arbitrate. Neither of these theories, at least on their face, would appear to suffer from the same infirmity as the agency theory, because they would, by operation of law, rather than as a matter of contract interpretation, bind Pathology Services to arbitrate.

Looking at these arguments in reverse order, one problem with the alter ego theory is that Aetna has not cited to any evidence that Ohio State University Physicians might be an alter ego of Pathology Services.  Courts are often reluctant to start parties down a path of expensive discovery without at least some plausible claim that the issue on which discovery is to be taken is remotely viable.  See, e.g., Bell Atlantic Corp. v. Twombly, 550 U.S. 554 (2007).  Aetna does, in its summary judgment motion and memorandum, suggest that the fact that Pathology Services is a wholly-owned subsidiary of Ohio State University Physicians and that it participated in some way in the creation of another

-10-

physicians' group ("Path Component" or "Pathology Components") which allegedly billed its services directly to Aetna even though it was not a participating provider, raises a factual question about whether the two plaintiffs are alter egos of each other. In order to determine if this fact, or other considerations, constitute a good faith basis for requesting discovery on this theory, the Court is required to explore in some depth the legal structure of the alter ego theory under Ohio law.

Aetna cites the Ohio Supreme Court's decision in <u>Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.</u>, 67 Ohio St.3d 274 (1993), in support of its alter ego argument.  In that case, the court held that the alter ego theory, which allows a creditor of a corporation to recover not only from a corporation but also from its shareholders, "was developed to protect creditors of a corporation from shareholders who use the corporate entity for criminal or fraudulent purposes."  <u>Id</u>. at 287.  It permits the courts to disregard the "fiction" of the corporate entity when it would be unjust to recognize it.  In terms of the elements of such a claim, the <u>Belvedere</u> court did not require proof that the corporation was formed for a fraudulent or criminal purpose, but only proof that it was used in that way.  Of course, proof of fraud is not, by itself, sufficient; there must also be evidence that the corporation was dominated by its shareholder to the point that it had "no separate mind, will, or existence of its own" and that this domination was used to commit the fraud in question.  <u>Id</u>. at 288.  Further, the theory (at least as it relates to piercing the corporate veil for the purpose of creating shareholder liability) is usually limited to situations where the act giving rise to liability was fraudulent, illegal, or similarly unlawful; garden variety tort and contract claims do not suffice.  <u>See Dombrowski v. WellPoint, Inc.</u>, 119 Ohio St. 3d 506, 513-14 (2008).  The

result of proving an alter ego theory in the creditor context is that the shareholders of the corporation can be held liable for corporate obligations to the same extent as the corporation itself.

Ordinarily, this theory would not allow a creditor (or an adverse contracting party) to proceed directly against someone who is not the other corporation's shareholder, but rather a wholly-owned subsidiary of the corporation. However, Ohio law would appear, at least in some circumstances, to use an alter ego theory not just to permit the veil between a corporation and its shareholders to be pierced, but also to allow a corporate parent and its subsidiary to be treated as a single entity. Thus, for example, in Danziger v. Luse, 103 Ohio St. 337 (2004), the court allowed shareholders of a parent corporation to examine the books and records of a wholly-owned subsidiary where the subsidiary was the only asset owned by the parent, and the parent and subsidiary shared common directors and officers. This same type of reasoning has led the Court of Appeals to conclude that "alter ego" and "veil piercing" are actually distinct concepts under Ohio law, and that the "alter ego" theory can be used to treat related corporations (or, as in that case, shareholders and corporations) as if they were the same entity, thus allowing a claim against a shareholder to become a claim against the corporation as well. See In re Fisher, 296 Fed. Appx. 494 (6th Cir. 2008). The Fisher court identified seven factors which, in its view, Ohio courts would apply in determining if two legally distinct entities can be treated as a single entity for purposes of liability, including

> (1) grossly inadequate capitalization, (2) failure to observe corporate formalities, (3) insolvency of the debtor corporation at the time the debt is incurred, (4) shareholders holding themselves out as personally liable for certain corporate obligations, (5) diversion of funds or other property of the company property for

>personal use, (6) absence of corporate records, and (7) the fact that the corporation was a mere facade for the operations of the dominant shareholder(s).

See id. at *10, quoting Taylor Steel, Inc. V. Keeton, 471 F.3d 598, 605 (6th Cir. 2005).

It seems unlikely that any of these circumstances apply here. Certainly, Aetna has not argued strongly that they do. Its argument about piercing the corporate veil and/or alter ego, as articulated it its summary judgment brief, is that Pathology Services was involved with its parent, Ohio State University Physicians, both in the creation of Path Component and the billing of its physicians' services to Aetna as if they were preferred providers. Although Aetna describes this practice as "fraudulent billing," it has not argued that it would be unable to obtain complete relief on its contract claim from Ohio State University Physicians, or that Ohio State University Physicians is either insolvent or undercapitalized.

Here, to permit what appears to be extremely broad discovery of the interrelationship of the two corporations based on nothing more than the existence of a potential breach of contract claim would, in the Court's view, be a misuse of the parties' resources and be disproportionate to the single issue involved in this case, which is whether arbitration or litigation (or some combination of the two) will be the appropriate vehicle for resolving the parties' differences. Thus, even if the discovery requested on this issue has some peripheral relevance, the Court does not believe that, at this point, the potential cost and delay in engaging in extensive discovery about it can be justified. See Fed.R.Civ.P. (B)(2)(b)(iii) ("On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: ... the burden or expense of the proposed

-13-

discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues").

The other argument advanced by Aetna is that Pathology Services should be estopped from denying that it is bound to arbitrate under the agreement because it accepted the benefits of the agreement, i.e., it received payment from Aetna for services billed to its patients who had insurance through Aetna. Again, speaking only to the discovery aspect of this issue, the Court sees two problems which militate against allowing discovery on this issue.

First, the simple fact that Pathology Services, as a provider of services under the contract negotiated between its parent corporation and Aetna, gained the right to bill Aetna for its services, may not be the type of direct benefit that triggers the operation of equitable estoppel. The case cited by Aetna, Javitch v. First Union Securities, Inc., 315 F.3d 619 (6th Cir. 2003), makes it clear that "a nonsignatory may be bound to an arbitration agreement under an estoppel theory when the nonsignatory seeks a *direct* benefit from the contract while disavowing the arbitration provision." Id. at 629, citing Thomson-CSF v. Am. Arbitration Ass'n,, 64 F.3d 773, 778-79 (2d Cir. 1995). An indirect benefit will not do. As an example of a direct benefit, the court pointed to the situation where the nonsignatory had asserted breach of contract claims directly under the contract. That is not the situation here, however; Pathology Services is not seeking to enforce any provision of the contract as if it were a signatory, yet at the same time disavowing another provision of the contract. In fact, Javitch is ordinarily cited in the context of a suit brought by a non-signatory under the contract, and a claim, in response, that if

the non-party is seeking to enforce the contract (the "direct benefit") it must take the contract in its entirety, including the arbitration clause.  See, e.g., Burgher v. Dansey, 2004 WL 842505 (Mich. App. April 20, 2004); see also Gerig v. Khan, 95 Ohio St. 3d 478 (2002) (allowing signatory to assert arbitration clause against non-signatory who had sought a declaration of the signatory's rights and obligations under the contract).

However, there is some authority (although not in Ohio) which holds that even when a non-signatory is not the party suing under the contract, but the one being sued, if that party had previously demanded and received substantial benefits under the contract, and if the dispute is closely related to the contract, the non-signatory may be compelled to arbitrate.  See, e.g., Wood v. PennTex Resources, L.P., 458 F.Supp. 2d 355 (S.D. Tex. 2006). Other courts have gone further, suggesting that even if the benefits received are not substantial, as long as they flow directly from the contract containing the arbitration clause, the recipient of those benefits can be compelled to arbitrate.  See, e.g. World Group Securities, Inc. v. Allen, 2007 WL 4168572 (D. Ariz. November 20, 2007).  However, the exact parameters of this doctrine are unclear, and, as noted in Wood v. PennTex Resources, L.P., supra, there is little, if any, authority from any Courts of Appeals on this issue - all of which would be merely advisory here, because the underlying issue is one of Ohio law.  Further, it would not appear that the payments made directly to Pathology Services are the issue involved in the arbitration, but rather the payments made to Path Component, so the dispute which has been submitted to arbitration may well not have any relation to whatever benefits Pathology Services received under the contract.

Even if there is some basis, however, for asserting equitable estoppel in these circumstances, the Court concludes that the discovery requested by Aetna is unnecessary in order for

-15-

it to be able to pursue this theory. Any benefit derived by Pathology Services was presumably paid by Aetna, and Aetna should have complete records of such payments. It has been able to quantify the amounts paid to Pathology Services under the terms of the contract without the need for any discovery, and it is difficult to see how discovery would add anything to this particular argument. Again, when measured against the narrow issue presented by the plaintiffs' complaint and the need (based in large part on Aetna's apparent efforts to move the arbitration forward) to resolve the issue speedily, discovery on this issue would be both time-consuming and duplicative and therefore cannot be justified.

### C. Discovery Related to the Agency Theory

The Court now returns to the question of how much discovery on Aetna's agency theory is needed. In its summary judgment memorandum, Aetna cites to representations made to it during the course of negotiations for the 2005 contract and on provisions of the contract itself as indicative of an agency relationship. While that evidence may speak in part to whether the plaintiffs were in an agency relationship, this is an area where discovery is needed because additional evidence on the agency question may be known only to the plaintiffs and may not have been disclosed to Aetna either during the course of contract negotiations or in the contract terms.

In order to define the proper scope of this discovery, the Court has examined the affidavit filed by Aetna in support of its request that the Court delay ruling on summary judgment until after it obtains discovery. There, Aetna argues that it needs access to certain communications between Ohio State University Physicians and Pathology Services to determine if the former was acting as the agent of the latter when it negotiated the contract. It also identifies the "behavior of the parties" as

-16-

something it wishes to discover, although it does not specify exactly what type of behavior it believes to be relevant. In its motion to compel discovery, it identified requests 1-5, 7, 9, 10, 12, and 15 of its document requests as pertinent to the agency issue. Those requests seek production of all documents relating to the 2005 agreement, all documents in which Pathology Services acknowledged the agreement, any instructions given by any party concerning compliance with the agreement (and particularly paragraph 2.4), documents showing corporate ownership of the plaintiffs, a listing of all physicians who received reimbursements under the 2005 agreement, any contracts among the plaintiffs and Pathology Components, documents showing plaintiffs' office and laboratory locations, documents relating to reimbursement claims from Amy Gerwitz, communications relating to Pathology Components, and directors' minutes or resolutions dealing with both the adoption of the 2005 agreement and the creation or existence of Pathology Components.

 Although the Court agrees that there may be some discovery on the agency question which might shed light on whether, at the time of the negotiation of the 2005 agreement, Ohio State University Physicians was acting as an agent for Pathology Services, it is clear that the discovery covered by these ten requests is far too broad. Any actions taken after the agreement was negotiated and signed (and especially actions related to the formation of Pathology Components, its employees, and its billings) might be relevant to the merits of the dispute which Aetna is seeking to arbitrate, but they are not reasonably calculated to lead to the discovery of relevant evidence on the agency question.

 In short, the Court concludes that Aetna might not have access to, or knowledge of, the exact relationship between the two plaintiffs at or about the time of contracting or their

communications with each other about the contract.  Documents on this topic could conceivably show whether or not there was some type of agency relationship and on whose behalf Ohio State University Physicians was acting when it negotiated and signed the contract.  It would not be appropriate to deny Aetna the opportunity to conduct limited discovery in order to see if there is some factual support for its agency theory.  To that extent, therefore, it makes sense both to permit this limited amount of discovery, and to allow Aetna to supplement its response to the summary judgment motion after the discovery has been completed.

## IV.  Conclusion and Order

For the following reasons, the Court grants in part and denies in part plaintiffs' motion for a protective order (#24) and defendant's motion to compel discovery (#27).  Plaintiffs shall produce, within seven days, documents relating to their corporate structure and relationship at the time of negotiation and signing of the 2005 agreement, and documents reflecting communications between plaintiffs at the same time concerning the agreement or the negotiation process, including any documents dealing with Pathology Services' knowledge or acceptance of the terms of the agreement after it was signed.  The parties shall discuss, after these documents are produced, whether a short Rule 30(b)(6) deposition will be necessary to explore further the subject of agency.  If so, that deposition shall be scheduled and completed within fourteen days of the production of the documents.  Aetna may file a supplemental memorandum on the issue of summary judgment no later than seven days after any deposition is completed or, if no deposition is scheduled, within fourteen days after the documents are produced.  To that extent, its motions for an extension of time or to delay summary judgment proceedings (#31 and #33) are both granted.  Nothing in this order shall prevent plaintiffs (1) from producing documents or

scheduling a deposition more promptly than required by this order, or (2) requesting emergency relief concerning the progress of the arbitration.

## V. Procedure on Reconsideration

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge.  28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5.  The motion must specifically designate the order or part in question and the basis for any objection.  Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge.  S.D. Ohio L.R. 72.4.

/s/ Terence P. Kemp
United States Magistrate Judge