## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**OSU PATHOLOGY SERVICES,
LLC, *et al.*,**

          **Plaintiffs,**

**-v-**

                                              **Case No.: 2:11-cv-005**
                                              **JUDGE SMITH**
                                              **Magistrate Judge Kemp**

**AETNA HEALTH, INC.,**

          **Defendant.**

## OPINION AND ORDER

This matter is before the Court on Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction (Doc. 42); Plaintiffs' Motion for Summary Judgment (Doc. 20); and Defendant's Motion for Summary Judgment (Doc. 35). The motions have been fully briefed and are ripe for review.

## I.    BACKGROUND

Plaintiff Ohio State University Physicians, Inc. ("OSU Physicians") and Defendant Aetna Health Inc. ("Aetna"), entered into the "Physicians Group Agreement" in May 2005, which had an effective date of July 1, 2005 through August 31, 2010 (hereinafter "2005 Agreement"). The 2005 Agreement provides that OSU Physicians are part of Aetna's participating provider network and will provide healthcare services to Aetna's insured. In exchange for the access to Aetna's members, OSU Physicians agreed to receive payment for services at the reimbursement rates set forth in the 2005 Agreement.

The 2005 Agreement defines "Participating Provider" as follows:

> Any physician, hospital, hospital-based physician, skilled nursing facility, or other individual or entity involved in the delivery of health care of ancillary services who or which has entered into and continues to have a current valid contract with [Aetna] to provide Covered Services to Members, and, where applicable, has been credentialed by [Aetna] or its designee consistent with [Aetna's credentialing policies. Certain categories of Participating Providers may be referred to herein more specifically as, e.g., "Participating Physicians" or "Participating Hospitals."

(*See* 2005 Agreement, attached as Exhibit A to Declaration of Margaret Anson, Aetna's Senior Network Manager, hereinafter "Anson Decl."). A "Group Physician" is defined as "[a] duly licensed and qualified physician who is employed by, or who is a partner or shareholder, of [OSU Physicians]. (*Id.*).

Plaintiff OSU Pathology Services, LLC ("OSU Pathology"), is a limited liability company that carries out the medical education, research, and clinical service activities of the Department of Pathology of the College of Medicine at The Ohio State University. It is a wholly owned subsidiary of OSU Physicians. There is a dispute between the parties regarding whether Plaintiff OSU Pathology is subject to the 2005 Agreement. Defendant Aetna argues that OSU Pathology is a Participating Provider as defined above.

The underlying dispute between the parties arises from a provision in the 2005 Agreement that states that Plaintiffs are not entitled to reimbursement for certain "Modifier 26" charges rendered by its physicians–charges that attach to certain pathology services. (Anson Decl. ¶ 17). However, providers not part of Aetna's provider network (i.e., non-participating providers) may be entitled to payment for these same Modifier 26 charges. (*Id.*).

In September 2008, OSU Path Component LLC ("Path Component") was established and its sole member is OSU Pathology. Plaintiffs control and act as the agent for Path Component. (Pukay-Martin Dep. at 6; Anson Decl. ¶ 18). After the creation of Path Component, OSU

Physicians and/or OSU Pathology began electronically billing Modifier 26 charges for services render by OSU Physicians and/or OSU Pathology Physicians under the Path Component tax identification number ("TIN").  This resulted in these claims being adjudicated and paid electronically as if the services were rendered by a non-participating provider–even though these services were rendered by Plaintiffs' physicians, such as Dr. Amy Gewitz.  (Anson Decl. ¶ 19). Between June 17, 2009, and August 31, 2010, Aetna received over 165,000 claims for Modifier 26 charges for payment under the Path Component tax number.  Aetna subsequently paid over one million dollars on these now disputed claims.  Aetna asserts that the billing of these claims under Path Component was not specifically authorized by them, nor did the 2005 Agreement provide for such billing practices, and as such, constitutes fraudulent billing of services rendered pursuant to the 2005 Agreement.  (Anson Decl. ¶¶ 20-22).

Defendant Aetna further asserts that Plaintiffs breached the 2005 Agreement which required OSU Physicians to "provide to Members, through Participating Group Providers," services covered by the Aetna Member's health insurance plan.  (*See* § 2.1 of the 2005 Agreement).  In addition, Section 4.1.4 of the 2005 Agreement required that ". . . Participating Group Physicians agree . . . (d) [t]o utilize Participating Group and Participating Group Physicians to the fullest extent possible, consistent with sound medical judgment."

Defendant Aetna asserts that these claims "arise out of or relate to" the subject matter of the 2005 Agreement and pursuant to the agreement, on December 17, 2010, Aetna filed a Demand for Arbitration with the American Arbitration Association ("AAA").  Section 8.3 of the 2005 Agreement, titled Arbitration, specifically states:

Any controversy or claim arising out of or relating to this Agreement or the breach, termination, or validity thereof, except for temporary, preliminary, or permanent injunctive relief or any other form of equitable relief, shall be settled by binding arbitration administered by the American Arbitration Association ("AAA") and conducted by a sole arbitrator in accordance with AAA's Commercial Arbitration Rules ("Rules"). The arbitration shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16, to the exclusion of state laws inconsistent therewith or that would produce a different result, and judgment on the award rendered by the arbitrator may be entered by any court having jurisdiction thereof. Except as may be required by law or to the extent necessary in connection with a judicial challenge, or enforcement of an award, neither a party nor the arbitrator may disclose the existence, content, record or results of an arbitration. Fourteen (14) calendar days before the hearing, the parties will exchange and provide to the arbitrator (a) a list of witnesses they intend to call (including any experts) with a short description of the anticipated direct testimony of each witness and an estimate of the length thereof, and (b) premarked copies of all exhibits they intend to use at the hearing. Depositions for discovery purposes shall not be permitted. The arbitrator may award only monetary damages in accordance with this Agreement. Group and Company agree to hold arbitration within Franklin County, Ohio.

(2005 Agreement p. 18, attached as Ex. A to Anson Decl.).

In August 2010, Aetna and OSU Physicians entered into a new Physician Group Agreement which became effective September 1, 2010 (hereinafter "2010 Agreement"). The 2010 Agreement also states that OSU Physicians will provide healthcare services to Aetna's insureds. Section 9.10 of the 2010 Agreement provides, in pertinent part:

This Agreement including the Product Participation Schedule, Participation Criteria Schedules, Services and Compensation Schedules, if applicable and any additional attached schedules constitutes the complete and sole contract between the Parties regarding the subject matter described above and supercedes any and all prior and contemporaneous oral and written representations, communications, proposals or agreements not expressly included in this Agreement[.]

The Arbitration provision, Section 8.3 of the 2005 Agreement, was "not expressly included in" the 2010 Agreement. Plaintiffs therefore argue that Aetna's Demand for Arbitration filed on December 17, 2010, is not valid because it was filed more than three months after Aetna

and OSU Physicians revoked their respective rights and obligations to arbitrate.

In response to Defendant's Demand for Arbitration, Plaintiff initiated this case on January 4, 2011, seeking to permanently enjoin Aetna from moving forward with the AAA arbitration.  In an attempt to seek a quick resolution in this case, Plaintiffs filed a motion for summary judgment.  On January 20, 2011, Aetna's counsel wrote to the AAA and stated:

> The District Court has not granted an injunction in this matter.  In fact, Respondent has not moved for a temporary restraining order or a preliminary injunction to stop these proceedings from moving forward.  Thus, AAA should move forward without delay and submit a list of potential arbitrators for selection.

(Walker Aff. ¶ 5, Doc. 43).

On March 4, 2011, Plaintiffs' counsel was notified by the AAA that the arbitrator had scheduled the arbitration hearing for June 1, 2011, and set mid-May 2011 deadlines for pre-hearing disclosures.  Then, on March 10, 2011, Plaintiffs filed a Motion for Temporary Restraining Order and Preliminary Injunction.

## II.    STANDARD OF REVIEW

Under the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA"), a written agreement to arbitrate disputes arising out of a contract involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The requirements set forth in the FAA were "designed to override judicial reluctance to enforce arbitration provisions, to relieve court congestion, and to provide parties with a speedier and less costly alternative to litigation."  *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).

Section 4 of the FAA sets forth the procedure to be followed by the district court when

presented with a petition to compel arbitration and provides, in relevant part, that:

> [a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court ... for an order directing that such arbitration proceed in the manner provided for in such agreement.... The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.... If the making of the arbitration agreement ... be in issue, the court shall proceed summarily to the trial thereof.

9 U.S.C. § 4.  Thus, the Court must first inquire as to whether the parties have agreed to arbitrate the dispute at issue.  If the district court is satisfied that the agreement to arbitrate is not "in issue," it must compel arbitration. If the validity of the agreement to arbitrate is "in issue," the court must proceed to a trial to resolve the question.  9 U.S.C. § 4.

In order to show that the validity of the agreement is "in issue," the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate. *See Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 129-30 (2d Cir. 1997).  The required showing mirrors that required to withstand summary judgment in a civil suit. *Id. See Aiken v. City of Memphis*, 190 F.3d 753, 755 (6th Cir.1999) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

In determining whether the parties have made a valid arbitration agreement, "state law may be applied if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally," although the FAA preempts "state laws applicable only to arbitration provisions."  *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S.681, 686-87 (1996) (quotation omitted).  Therefore, state law governs "generally applicable contract defenses [to an arbitration clause], such as fraud, duress, or unconscionability." *Id.* at 687; *see also Great Earth*

-6-

*Companies, Inc. v. Simons*, 288 F.3d 878 (6th Cir. 2002). In assessing whether an agreement to arbitrate has been made, moreover, "[c]ourts are to examine the language of the contract in light of the strong federal policy in favor of arbitration. Likewise, any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration." *Stout*, 228 F.3d at 714. A person's alleged ignorance of the terms of a signed arbitration agreement is no defense to its enforcement. *Haskins v. Prudential Ins. Co. of Amer.*, 230 F.3d 231, 241 (6th Cir. 2000).

The "party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Financial Corp. Alabama v. Randolph*, 531 U.S. 79, 91 (2000). But "[i]n order to show that the validity of the agreement is 'in issue' [under 9 U.S.C. § 4], the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate." *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002).

The FAA establishes a liberal policy favoring arbitration agreements, and any doubts regarding arbitrability should be resolved in favor of arbitration over litigation. *See Nestle Waters N. Am., Inc. v. Bollman*, 505 F.3d 498, 503 (6th Cir. 2007) ("[w]e examine arbitration language in a contract in light of the strong federal policy in favor of arbitration, resolving any doubts as to the parties' intentions in favor of arbitration."). However, "[w]hile ambiguities … should be resolved in favor of arbitration, we do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) (internal citation omitted).

III.    **DISCUSSION**

    A.    **Motion for Temporary Restraining Order and Preliminary Injunction**

       Plaintiffs filed this Motion on March 10, 2011, after the briefing on both parties' Motions for Summary Judgment was almost complete.  Plaintiffs assert that this request is necessary because the Defendant's requested arbitration has now been set for a hearing on June 1, 2011. The Court held an informal preliminary conference pursuant to Rule 65.1 of the Local Civil Rules of the United States District Court for the Southern District of Ohio on Wednesday, March 16, 2011.  The parties agreed to a continuance of the arbitration to allow the Court time to decide the underlying Motions for Summary Judgment as the outcome of those motions will determine whether the case is proper for adjudication via arbitration.  Accordingly, this Opinion and Order will ultimately decide the Motions for Summary Judgment and the Motion for a Temporary Restraining Order and Preliminary Injunction is now **MOOT**.

    B.    **Motions for Summary Judgment**

       Plaintiffs seek an order of this Court restraining Defendant Aetna from proceeding with the Arbitration, assigned number 52 187 Y 00719 10 on the docket of the AAA.  Plaintiffs argue that there is no arbitration agreement in its current contract with Defendant Aetna.

       Defendant Aetna also seeks summary judgment arguing that the arbitrator, and not this Court, should determine the arbitrability of Aetna's claims.  In the alternative, Defendant argues that summary judgment should be granted in Aetna's favor and Plaintiffs should be ordered to arbitrate the claims.  The Court will first consider whether it has authority to determine the arbitrability of Aetna's claims, and then if so, will turn to the issue of whether the claims are subject to arbitration.

### 1. Issue of Who Should Determine Arbitrability

Defendant Aetna argues that the AAA arbitrator is the proper adjudicator on the matter of arbitrability of Aetna's claims against Plaintiffs. Defendant relies on the arbitration clause in the 2005 Agreement which states in pertinent part: "Any controversy or claim arising out of or relating to this Agreement or the breach, termination, or validity thereof, except for temporary, preliminary, or permanent injunctive relief or any other form of equitable relief, shall be settled by binding arbitration. . .." *(See* Section 8.3 of the 2005 Agreement attached as Ex. A to Anson Decl.).

Plaintiffs counter that decisions on questions of arbitrability are for the courts, not the arbitrators. Plaintiffs argue that they are seeking an injunction permanently restraining and enjoining Aetna from proceeding with the arbitration, and that such relief is expressly excluded from Section 8.3 set forth above. Plaintiffs assert that the parties terminated the 2005 Agreement effective September 1, 2010, and that neither party has a right or duty to arbitrate since that date. (Pls.' Response, doc. 41, at 4).

Defendant Aetna is asking this Court to defer to an arbitrator in determining the issue of arbitrability regarding a clause in the 2005 Agreement that was terminated on September 2, 2010. Further, there is an issue regarding whether OSU Pathology is even a party to the 2005 Agreement that contained the arbitration provision. Although doubts regarding the scope of an arbitration clause (i.e. what is arbitrable) must be resolved in favor of arbitration, the presumption is reversed when determining who should determine arbitrability. *Bishop v. Gosiger, Inc.*, 692 F. Supp. 2d 762 (E.D. Mich. March 4, 2010). The United State Supreme Court explained that "[c]ourts should not assume that parties agreed to arbitrate arbitrability unless there is 'clear and

unmistakable' evidence that they did so." *First Options of Chicago, Inc. v. Kaplan*, 514. U.S.

938, 944 (1995) (citing *AT & T Technologies*, 475 U.S. at 649). Further, courts have consistently

held that courts should decide arbitrability questions. In *Litton Financial Printing Div. v.*

*N.L.R.B.*, 501 U.S. 191, 208 (1991), the Supreme Court held that, "Whether or not a company is

bound to arbitrate, as well as what issues it might arbitrate, is a matter to be determined by the

court, and a party cannot be forced to 'arbitrate the arbitrability question.'" Similarly, in *AT&T*

*Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 651 (1986), it stated:

"It was for the court, not the arbitrator, to decide in the first instance whether the dispute was to

be resolved through arbitration."

In the case at bar, it is insufficient that the 2005 Agreement contains a clause that the

parties intended to arbitrate arbitrability. There is a dispute between the parties regarding whether

the 2005 Agreement encompasses Defendant's current demand for arbitration. The Court cannot

compel arbitration unless it reaches the conclusion that the parties agreed to arbitrate the claims at

issue in this case. Accordingly, the issue of arbitrability will be decided by this Court.

### 2. Whether Aetna's Claims are Subject to Arbitration

Plaintiffs make several arguments in support of their summary judgment motion seeking an

order of this Court that they are not required to arbitrate, and Defendant, in response, argues in

favor of arbitration. The arguments of the parties consist of, first, the applicability of the

arbitration clause in the 2005 Agreement; and second, whether Plaintiff OSU Pathology was a

party to the 2005 Agreement and therefore subject to the terms of the 2005 Agreement.

a.      Arbitration Agreement

There is no dispute between the parties that the 2005 Agreement contains an arbitration clause and the 2010 Agreement does not.  The underlying dispute which Aetna has submitted to arbitration involves 165,000 claims submitted for Modifier 26 charges between June 17, 2009 and August 31, 2010, under the 2005 Agreement.  Plaintiffs argue that at the time Defendant made the demand for arbitration, the 2005 Agreement providing for arbitration had been terminated, and the right to arbitrate does not survive that Agreement.  Defendant, however, argues that its claims are arbitrable because they "arise out of or relate" to the subject matter of the 2005 Agreement, not the subject matter of the 2010 Agreement.  This Court must look to Ohio law on contract construction and interpretation in resolving these issues.

The general policy of Ohio law is to favor and encourage arbitration.  *See Brennan v. Brennan*, 164 Ohio St. 29 (1955).  But arbitration is nonetheless a matter of contract, and despite the strong policy in its favor, a party cannot be compelled to arbitrate any dispute that he has not agreed to submit.  *See Oncology Div. of UIMA v. Community Insurance Co.*, 2002 Ohio 4800 (Ohio App. Ct. 2002) (citing *Teramar Corp. v. Rodier Corp.*, 40 Ohio App. 3d 39, 40 (Ohio App. Ct.1987).  Courts have therefore been careful to require arbitration only where the parties have agreed to it.  Since arbitration is a matter of contract, the Court must look closely at the language of the contracts at issue in this case: the 2005 and 2010 Agreements.

Section 8.3 of the 2005 Agreement, titled Arbitration, specifically states:

Any controversy or claim arising out of or relating to this Agreement or the breach, termination, or validity thereof, except for temporary, preliminary, or permanent injunctive relief or any other form of equitable relief, shall be settled by binding arbitration administered by the American Arbitration Association ("AAA") and conducted by a sole arbitrator in accordance with AAA's Commercial

-11-

Arbitration Rules ("Rules").

On September 1, 2010, the 2010 Agreement went into effect, which does not contain an arbitration provision.  Section 9.10 of the 2010 Agreement provides, in pertinent part: "This Agreement . . . supersedes any and all prior or contemporaneous oral or written . . . agreements not expressly included in this Agreement. . .." ("Integration Clause").  It is this language that Plaintiffs rely on in arguing that all of the terms of the 2005 Agreement were revoked, except for what was expressly included in the 2010 Agreement.  There is no dispute that in accordance with Section 8.3 of the 2005 Agreement, the parties agreed to arbitrate disputes arising from that Agreement.  However, that arbitration provision was not included in the 2010 Agreement. Plaintiffs argue that this illustrates the express and clear intent of the parties that Section 8.3 would not survive its termination.  Defendant, however, argues that the arbitration provision in the 2005 Agreement survived the expiration of that contract.  The Court must therefore determine whether the parties intended the arbitration provision to survive the termination of the 2005 Agreement and whether they intended the 2010 Agreement to change/remove the arbitration provision for claims arising under the 2005 Agreement.

Courts have instructed that in deciding if a dispute is arbitrable, a court must initially determine whether the arbitration provision is broad or narrow.  *See Cummings v. FedEx Ground Package Sys., Inc.*, 404 F.3d 1258, 1261 (10th Cir. 2005).  "Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it."  *Id.* (internal quotation marks omitted).  The 2005 Agreement contains the language "arising out of or relating to this Agreement," which has been construed as a broad

-12-

arbitration provision.  *See Miron v. BDO Seidman, LLP*, 342 F. Supp. 2d 324, 330 (E.D. Pa. 2004) (when an arbitration provision provides for any dispute "arising out of" a particular contract, the provision is construed broadly to suggest that a given dispute is arbitrable); *see also Williams v. Imhoff*, 203 F.3d 758, 765, 766 (10th Cir. 2000) ("[W]e believe [the phrase, 'arising out of,'] must be broadly construed to mean 'originating from,' 'growing out of,' or 'flowing from.'").  In construing the arbitration provision in this case, " any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1 (1983).

"Under the federal common law of arbitrability, an arbitration provision in a contract is presumed to survive the expiration of that contract unless there is some express or implied evidence that the parties intend to override this presumption[.]" *Riley Mfg. Co., Inc. v. Anchor Glass Container Corp.*, 157 F.3d 775, 781 (10th Cir. 1998).  A dispute "arises under" a previous contract if it involves rights that to some degree vested or accrued during the life of the contract and merely ripened after expiration, or relates to events that occurred at least in part while the contract was still in effect.  *Id.*

Plaintiffs argue that the 2005 Agreement contained a survival clause, set forth in Section 9.12 entitled "Survival," which provides: "In additional to those provisions which by their terms survive expiration or termination of this Agreement (e.g. 4.3.2 and 5.3.1), Sections 5.5, 6.5 and 7.3 shall survive expiration or termination of this Agreement, regardless of the cause giving rise thereto."  Plaintiffs argue that this contract language is clear and unambiguous and only Sections 5.5, 6.5, and 7.3 survive the termination of the 2005 Agreement.  Section 8.3 containing the arbitration provision is not contained in this section, nor is there any language in Section 8.3 that

-13-

provides that it shall survive the termination of the 2005 Agreement.

Further, Plaintiffs assert that the parties' intent to revoke the agreement to arbitrate effective September 1, 2010, is evidenced by the express words of the 2010 Agreement, that is "supercedes any and all prior . . .agreements not expressly included in this Agreement. . .." Plaintiffs argue that Section 8.3 of the 2005 Agreement was not expressly included in the 2010 Agreement and therefore cannot be resurrected now.

Plaintiffs rely on two cases with similar fact patterns to the case at bar.   In *Continental Cas. Co. v. LaSalle RE Ltd.*, 511 F. Supp. 2d 943 (N.D. Ill. 2007), the parties entered into the first contract, a Retrocession Agreement, which contained an arbitration provision.  The parties subsequently executed a Commutation and Release Agreement that purported to "fully and finally terminate, release, determine and fully and finally settle, commute and extinguish all their respective past, present, and future obligations and liabilities, known and unknown, fixed and contingent, under, arising out of, and/or pursuant to the Reinsurance Agreements and any other agreements relating to or arising out of the Reinsurance Agreements. . . ."  *Id.* at 945.  The Commutation Agreement did not contain an arbitration clause.  When the defendant LaSalle made a demand for arbitration, plaintiff sought a declaration in court regarding its rights and obligations under the Commutation Agreement.  The court held:

> The Court agrees with *Continental* that it would be difficult to envision a more clear statement of the parties' intent to extinguish their obligations under the Retrocession Agreement. The parties could have included an arbitration clause in the Commutation Agreement, but they chose not to do so. Based on the clear language of the Commutation Agreement, the Court finds that the parties intended to extinguish their duty to arbitrate.

*Id.* at 947-948.  However, Defendant argues, and the Court agrees, that *Continental* is

-14-

distinguishable from the case at bar because in *Continental* it was clear that the parties intended to

extinguish their obligations under the first agreement, including an express release of any future

obligations to arbitrate.

Plaintiffs next cite *Spanski Enterprises, Inc. v. Telewizja Polska, S.A.*, 2007 U.S. Dist.

LEXIS 29786, *16 (S.D. N.Y. 2007), which involved an initial contract with an arbitration clause

and a later amendment to that contract "whose sole purpose, on its fact, [was] to amend the terms

of" the initial contract.  The court held that:

> The salutary principle that contracts should be interpreted to favor arbitration does
> not extend to precluding parties from modifying their contract to revoke an
> arbitration agreement in a subsequent written contract, or to interpreting contracts
> against their plain language and the manifest intent of the parties. To do so would
> contravene the still more fundamental principle that parties may not be compelled
> to arbitrate unless they have agreed to do so.
>
> Here, the language of the Second Amendment to the parties' Agreement, as well
> as its negotiation history, conclusively establishes that the parties intended to
> revoke their prior agreement to arbitrate disputes under Polish law, and substitute
> an express agreement to submit disputes to the federal courts in New York under
> New York law.

*Spanski*, 2007 U.S. Dist. LEXIS at *19-20.  However, *Spanski* is also factually different from the

case at bar because the initial clause calling for arbitration in Poland was replaced with a forum

selection clause designating that the agreement would be subject to New York law.  Therefore, it

was an amendment of the ultimate term of the Agreement between the parties.  Yet, in this case,

we are not dealing with an amendment, but rather an entirely new contract between the parties

that is prospective in nature, dealing with claims from September 1, 2010 and on.

Defendant Aetna responds that Plaintiffs' reliance on the survival clause in the 2005

Agreement is misplaced because the arbitration clause is severable from the agreement as a whole,

-15-

relying on *Buckeye Check Cashing v. Cardegna*, 546 U.S. 440, 445-46 (2006) ("as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract."). Defendant continues that "where a contract contains a survival clause, the content of such a survival clause is inconsequential in determining the survivability of the arbitration clause." (Def.'s Supp. Memo. at 14) (citing *Metcalf v. Merrill Lynch*, 2011 U.S. Dist. LEXIS 23518 at *19, 26-27 (M.D. Pa. Mar. 9, 2011)). Further, the survival clause in this case specifically provides that the provisions listed are not the only clauses that survive termination, suggesting that the parties intended other provisions to survive termination of the 2005 Agreement.

Defendants urge the Court to completely reject Plaintiffs' contentions based on the reasoning in *Training Source Inc. v. Mastery Technologies, Inc.*, 2000 U.S. Dist. LEXIS 8024 at *25 (W.D. Mich. June 1, 2000) and *Symyx Technologies, Inc. v. Stargate Mobile LLC*, 2006 U.S. Dist. LEXIS 74508 at *6-7 (E.D. Mich. Oct. 13, 2006). However, these cases are no closer to being on point than the cases cited by Plaintiffs. In fact, in *Symyx*, the parties merely terminated the agreement between them, they did not enter into a new contract. The agreement contained a survival clause providing specific sections that shall survive termination, but the arbitration clause was not one. When Symyx argued that the dispute resolution clause was not specifically designated as surviving termination that it has no effect, the court recognized that "the failure to expressly provide for the survival of the arbitration clause - while providing for the survival of other sections of the contract - could suggest that the parties did not intend the clause to survive the agreement's termination." *Id.* at *5. The court then looked to the intent of the parties and concluded that because there were other provisions that were not in the survival clause, including the attorney fee provision that the plaintiff was seeking fees under, "it would be a strained reading

of the agreement to suggest that these provisions do not survive termination merely because the agreement did not specifically designate them as surviving." *Id.* at *6.

Another case cited by Defendant is *Zucker v. After Six, Inc.*, 174 F. App'x 944, 947-948 (6th Cir. 2006), in which the Sixth Circuit held that "[i]f the duty to arbitrate automatically terminated upon expiration of the contract, a party could avoid his contractual duty to arbitrate by simply waiting until the day after the contract expired to bring an action regarding a dispute that arose while the contract was in effect." *Id.* (citing *Nolde Bros.*, 430 U.S. at 250-51). Accordingly, Defendant argues that the parties did not expressly agree that the disputes relating to the 2005 Agreement would only be arbitrated if the arbitration demand was filed prior to the termination of the 2005 Agreement.

The problem that this case presents that did not arise in the previously cited cases is that the parties did not merely terminate their agreement. They entered into a new agreement, one that did not contain an arbitration provision. Plaintiffs urge the Court to construe this as the parties intent that they no longer wished to engage in arbitration at all to resolve any of their disputes. Or, on the other hand, the 2010 Agreement can be read, just as it states on its face, that any issues that arise post-September 2010 are not subject to arbitration. But there is nothing in the express language of the Agreements, nor the parties intent, to discredit Defendant's argument that any dispute arising under the previous contract are still subject to arbitration.

Defendant Aetna further argues that the boilerplate integration clause of the 2010 Agreement only governs the subject matter of that Agreement–post September 1, 2010 services. Section 9.10 of the 2010 Agreement, the integration clause, provides:

> This Agreement . . . constitutes the complete and sole contract between the Parties

regarding the subject matter described above and supersedes any and all prior or contemporaneous oral or written representations, communications, proposals or agreements not expressly included in this Agreement. . ..

Plaintiffs are not arguing that the 2010 Agreement applies to issues that arose between the parties prior to September 1, 2010; however, Plaintiffs are suggesting that the language "supercedes any and all prior . . representations." However, Defendant is correct that this clause must be carefully construed in that it only applied to the post-September 1, 2010 subject matter. Therefore, the 2010 Agreement is silent as to any continuing obligation to arbitrate claims arising under the previous contract. It is also silent as to any release of all obligations under the 2005 Agreement. Further, as discussed above, the 2005 Agreement appears to be silent as to the continuation of the agreement to arbitrate.

Defendant offers *Kentucky Fried Chicken Corp. v. Collectramatic, Inc.*, 130 N.H. 680 (Sup. Ct. N.H. 1988), in support of its argument. In *Kentucky Fried Chicken*, the parties entered into two agreements, one in 1972 and the other in 1974. The 1972 agreement contained a clause in which the defendant agreed to indemnify the plaintiff for products liability claims. But the 1974 agreement did not contain an indemnification provision. The later agreement did contain an integration clause that stated: "this agreement contains the entire understanding. . . concerning the subject matter hereof and supersedes all prior and contemporaneous understandings or representations between the parties." *Id.* at 246. The court held that the integration clause in the second of two successive contracts did not alter the rights and duties of the parties as to events that occurred under the first contract; therefore, the indemnification provision that was only part of the first contract still applied to claims arising under the first contract.

Plaintiffs argument is very similar to what was argued and rejected in *KFC*, that "all

provisions of the 1972 agreement became inoperative for all purposes when the parties entered

into the 1974 agreement." *Id.* The *KFC* court held that basic contract interpretation rules "do not

require the conclusion that all provisions of the 1972 agreement merged into the 1974 agreement

and that the former constitutes inadmissible parole evidence. *Id.* at 248. The court noted that the

1974 agreement was prospective, speaking in terms of what the parties will and shall do, rather

than what they had done in the past. The court further explained:

> [I]t is readily apparent to us from the language of the 1974 contract as a whole,
> and from consistent language in the 1972 contract, that the parties intended to
> merge in the former only their prior agreements as to terms governing purchases
> and sales yet to be made. They intended it to have no effect at all on vested rights
> and concomitant duties with respect to sales already concluded. [Plaintiff's] appeal
> to the 1972 contract to determine the parties' indemnification rights was thus
> appropriate appeal to a separate agreement not within the scope of a later
> integrated document.

*Id.* at 248-49.

Turning to the case at bar, the aforementioned discussion in *KFC* provides the best

guidance for analyzing the affect of a subsequent agreement on the obligations of a prior

agreement. The 2010 Agreement contains language indicating it is intended to be prospective in

nature, like the subsequent agreement in *KFC*. There is no question that arbitration provisions

can survive expiration of an agreement where (1) "the dispute is over a provision of the [prior]

agreement" and (2) the parties have not indicated a desire to forego arbitration either "expressly

or by clear implication." *Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionery Workers

Union*, 430 U.S. 243, 255 (1977). In this case, there is no evidence of clear intent to revoke the

arbitration agreement with respect to claims arising out of the 2005 Agreement. The 2010

Agreement is prospective and only applies to claims from September 1, 2010 and after. As

illustrated by the Court's detailed discussion regarding the difficulty in applying existing caselaw to the facts of this particular case, it is a very close call.  The Court cannot conclude with absolute certainty that the termination of the 2005 Agreement terminated the agreement to arbitrate, and therefore the Court must enforce the arbitration agreement with respect to claims that arise under the 2005 Agreement.  *See Destinations by Design v. T-Mobile USA, Inc.*, 2010 U.S. Dist. LEXIS 48727 (S.D. Ohio 2010) (Smith, J.) (citing *Nestle Waters*, 505 F.3d at 503) ("The FAA establishes a liberal policy favoring arbitration agreements, and any doubts regarding arbitrability should be resolved in favor of arbitration over litigation.").

Having concluded that the arbitration clause applies to Aetna's claims arising under the 2005 Agreement, the Court must now address whether both Plaintiffs are bound by the 2005 Agreement.

b.      Parties to the 2005 Agreement

Plaintiffs assert that OSU Pathology is not a party to the 2005 Agreement and thus is not bound by its terms, specifically the arbitration clause.  Defendant Aetna argues that OSU Pathology is bound by the agreement pursuant to the express terms of the 2005 Agreement; and even if the contract is not construed to bind OSU Pathology, there are common law exceptions for binding a non-signatory to a contract.  The Court will therefore look first to the express terms of the 2005 Agreement and then, if necessary, turn to the common law.

Defendant Aetna argues that OSU Pathology is a "Participating Provider" as defined in the express terms of the 2005 Agreement.  The 2005 Agreement defines "Participating Provider" as follows:

Any physician, hospital, hospital-based physician, skilled nursing facility, or other

-20-

individual or entity involved in the delivery of health care of ancillary services who or which has entered into and continues to have a current valid contract with [Aetna] to provide Covered Services to Members, and, where applicable, has been credentialed by [Aetna] or its designee consistent with [Aetna's] credentialing policies.  Certain categories of Participating Providers may be referred to herein more specifically as, e.g., "Participating Physicians" or "Participating Hospitals."

(*See* 2005 Agreement, Ex. A to Anson Decl.).

OSU Pathology's Operating Agreement states that OSU Physicians was acting as an agent for OSU Pathology:

[OSU Physicians] and [OSU Pathology] will cooperate to market [OSU Pathology's] clinical programs to patients, employers and third party payors in conjunction with the OSU Health System.  OSUP shall negotiate, approve and monitor the performance of third party payors on behalf of [OSU Pathology].  The negotiation and execution of third party patient care contracts shall be conducted with full disclosure and participation by representatives of [OSU Pathology] which may be affected by the contract.  If [OSU Pathology] is affected by a proposed contract, it will participate in those aspects of the negotiating process which affect its specialty services and levels of reimbursements.

*See* §4.16 of OSU Pathology's Operating Agreement, attached as Exhibit A to Fogarty Declaration.

Further, Defendant relies on §2.4 of the 2005 Agreement in which OSU Physicians agreed to bind OSU Pathology: "[OSU Physicians] acknowledges and agrees that all provisions of this Agreement applicable to [OSU Physicians] shall apply with equal force to Participating Group Physicians, unless clearly applicable only to Group."

Plaintiffs argue that the plain language of the 2005 Agreement states that it is between OSU Physicians and Aetna. Further, Plaintiffs rely on §9.6, which relates to successors and assignments and states:  [t]his Agreement relates solely to the provision of Physician Services by Group and Participating Group Physicians and does not apply to any other organization which

-21-

succeeds to Group assets, by merger, acquisition or otherwise, or is an affiliate of Group."

Further, Plaintiffs cite to §8.4 of the 2005 Agreement relating to arbitration, which states:

"Company and Group agree that any arbitration or other proceeding related to a dispute arising

under this Agreement shall be conducted solely between them." Plaintiffs asserts that all of the

aforementioned provisions on the 2005 Agreement support their position that OSU Pathology is

not a party to the 2005 Agreement.

  The Court finds Plaintiffs arguments unpersuasive. The 2005 Agreement, specifically the

definition of Participating Provider, encompasses OSU Pathology. There is no dispute that OSU

Pathology was providing covered services to Aetna's members, submitting claims under the 2005

Agreement to Aetna, and receiving reimbursements from Aetna for those services. It is

questionable how Plaintiffs can, on one hand, receive the benefits of the negotiated terms of the

2005 Agreement with Aetna and then argue that OSU Pathology is not a party to that Agreement.

  Further, common law reaffirms that OSU Pathology is bound by the 2005 Agreement.

The Sixth Circuit and this Court have found that under certain circumstances, a party may be

bound to arbitrate disputes under the terms of a contract that the party did not sign. *Javitch v.*

*First Union Sec., Inc.*, 315 F.3d 619, 629 (6th Cir. 2003) ("[A] nonsignatory may be bound to an

arbitration agreement under ordinary contract and agency principles."). There are five recognized

theories for binding nonsignatories to arbitration agreements: "(1) incorporation by reference, (2)

assumption, (3) agency, (4) veil-piercing/alter ego, and (5) estoppel." *Id.* Thus, a nonsignatory

principal can be compelled to arbitrate under an agency theory if a party to the contract signed the

contract containing the arbitration agreement as the nonsignatory's agent. *Id.*; *Am. Bureau of*

*Shipping v. Tencara Shipyard S.P.A*, 170 F.3d 349, 352 (2d Cir. 1999) (nonsignatory can be

bound on agency theory).  Under ordinary agency principles, a principal is bound by contracts executed by an agent with actual or apparent authority.  *Master Consol. Corp. v. BancOhio Nat'l Bank*, 61 Ohio St. 3d 570, 575 N.E.2d 817, 820 (Ohio 1991); *UBS AG, Stamford Branch v. HealthSouth Corp.*, No. 07 Civ. 8490, 645 F. Supp. 2d 135, 2008 U.S. Dist. LEXIS 44572, at *6 (S.D.N.Y. June 6, 2008); *see Greene v. Hellman*, 51 N.Y.2d 197, 412 N.E.2d 1301, 1305-06, 433 N.Y.S.2d 75 (N.Y. 1980); Restatement (Second) of Agency § 140.

This case is similar to *MJR Intern., Inc. v. American Arbitration Ass'n*, 2009 U.S. Dist. LEXIS 82152 (S.D. Ohio August 26, 2009), aff'd 2010 U.S. App. LEXIS 19741 (6th Cir. September 21, 2010).  Like this case, *MJR* involved a dispute about whether a nonsignatory to an agreement containing an arbitration clause could be compelled to arbitrate disputes arising under the agreement.  The non-signatory party, MJR, had been named as a party to the arbitration proceedings on the theory that it was the principal of one of the signatories to the agreement and that under agency law, it was bound by the agreement.  MJR was ordered by the arbitrator to arbitrate the dispute.  MJR then filed a complaint in this Court seeking to be relieved of that obligation. The Court ultimately agreed with the arbitrator's conclusion that an entity named Oxford, which was a named party to the underlying agreement, had acted as MJR's agent in negotiating the agreement and that MJR was therefore bound by its terms, including the arbitration provision contained in the contract.  Similarly, OSU Physicians acted as the agent for OSU Pathology with both actual and apparent authority.  This is further supported by OSU Pathology's Operating Agreement.

Plaintiffs, however, argue that Defendant's reliance on *MJR* is misplaced because there was no dispute that Oxford was MJR's representative, but in this case, there is an issue as to

whether Mr. Barnhart even signed the 2005 Agreement as OSU Pathology's purported agent. Even assuming that Mr. Barnhart signed the 2005 Agreement as the Chief Operating Officer of OSU Physicians, the aforementioned principles still apply. OSU Pathology is a wholly owned subsidiary of OSU Physicians and it managed and controlled by OSU Physicians.

Finally, even when a non-signatory is not the party suing under the contract, but the one being sued, if that party had previously demanded and received substantial benefits under the contract, and if the dispute is closely related to the contract, the non-signatory may be compelled to arbitrate. *See, e.g., Wood v. PennTex Resources, L.P.*, 458 F.Supp. 2d 355 (S.D. Tex. 2006). Other courts have gone further, suggesting that even if the benefits received are not substantial, as long as they flow directly from the contract containing the arbitration clause, the recipient of those benefits can be compelled to arbitrate. *See, e.g., World Group Securities, Inc. v. Allen*, 2007 U.S. Dist. LEXIS 89368 (D. Ariz. November 20, 2007). There is no dispute that OSU Pathology submitted claims and received substantial benefits under the 2005 Agreement as shown by the following deposition testimony:

> Q. And did your LLC and your group physicians submit claims under this contract to Aetna?
> A. We submitted claims to Aetna.
> Q. Under this contract?
> A. Under this contract.
> Q. Did you tell Aetna that you wanted, that your LLC TIN is to be linked to this contract?
> A. We did.
> Q. And to be paid according to this contract? You have to answer.
> A. Yes.
> Q. So you accepted the benefits, three to five million dollars worth of benefits under this contract, correct?
> A. We accepted the reimbursement for our services delivered, yes.
> Q. Well, those were three to five million benefits, right?
> A. 3.5, three to five million dollars of cash receipts that we used to pay our

faculty and staff, yes.

Q.    And you were listed and attached to the contract that the LLC is a
      participating provider?

A.    We are listed as a participating provider, that's right, the LLC is.

Q.    And you represented to Aetna that your TIN should be linked to this
      contract?

A.    Our TIN was linked to this contract. I'm not sure legally whether we
      represented that or not. I think OSU Physicians, by signing the contract,
      linked the two.

Q.    And they were authorized to do so on your behalf, were they not?

A.    They were -- could negotiate.

Q.    They were authorized to tell Aetna to link your TIN number to this
      contract, weren't they?

A.    They were allowed to do that, yes

Q.    They were authorized to do that by your LLC?

A.    They were -- we approved the rates and the chairman of our department, as
      a member of the Board of OSU Physicians, did approve the Aetna contract
      and amendments.

Q.    And you also, they also approved – your pathologist physicians were
      accepted by Aetna as participating providers as well, correct?

A.    I presume that's true, yes.

Plaintiffs Dep. 103:11-105:10.

Therefore, looking at the express language of the 2005 Agreement, the Court finds that

OSU Pathology was a Participating Provider and therefore a party to the Agreement.  Further,

even if the express language of the 2005 Agreement is unclear, the common law provides that a

nonsignatory principal can be compelled to arbitrate.  The most compelling argument in this

respect is the fact that Plaintiff OSU Pathology was receiving benefits under the 2005 Agreement

and accordingly, can be compelled to arbitrate under the terms of that Agreement.

IV.     CONCLUSION

Based on the foregoing, Plaintiffs' Motion for Summary Judgment is **DENIED**, and Defendant's Motion for Summary Judgment is **GRANTED**.   Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction is therefore **MOOT**.  Final judgment shall be entered in favor of Defendant Aetna, finding that Aetna's claims against Plaintiffs are subject to the arbitration provision of the 2005 Agreement.

The Clerk shall remove Documents 20, 35, and 42 from the Court's pending motions list.

The Clerk shall remove this case from the Court's pending cases list.

**IT IS SO ORDERED.**

*/s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**